1
2
3                    UNITED STATES DISTRICT COURT
4                    EASTERN DISTRICT OF CALIFORNIA
5

6   **ANDREW HOWELL, on behalf of**          **CASE NO. 1:18-cv-01404-AWI-BAM**
    **himself and on behalf of all other**
7   **similarly situated individuals**
8                **Plaintiff**                **ORDER ON PLAINTIFF'S MOTION**
                                              **FOR CLASS CERTIFICATION AND ON**
9                **v.**                        **DEFENDANTS' MOTION TO STRIKE**

10  **LEPRINO FOODS COMPANY, a**
    **Colorado Corporation; LEPRINO**         (Doc. No. 84, 93)
11  **FOODS DAIRY PRODUCTS**
    **COMPANY, a Colorado Corporation;**
12  **and DOES 1–50, inclusive,**
13               **Defendants**
14

15

16      Plaintiff Andrew Howell ("Howell") filed suit against two cheese manufacturing

17  companies, Leprino Foods Company and Leprino Foods Dairy Products Company (collectively,

18  "Leprino"), alleging that Leprino violated California wage-and-hour laws by enforcing policies

19  and practices that are facially unlawful and that deprive hourly employees of timely and compliant

20  meal and rest periods.[1]  Howell worked as an hourly employee for Leprino from August 1987 to

21  March 2015.

22      Currently before the Court are two motions: (1) Howell's motion for class certification,

23  and (2) Leprino's motion to strike select evidence used in Howell's motion. Having reviewed and

24  considered all the briefing and evidence submitted by the parties, the Court will deny Leprino's

25  motion to strike and grant in part and deny in part Howell's motion for class certification.

26

27  [1] In their class certification briefing, the parties, including both Defendants (responding as one), make no distinction
    between the Leprino entities.  Rather, the parties treat both Defendants as if they are a single "Leprino" entity.  The
28  Court will adopt that practice in this order.

1

2                                    **BACKGROUND**

3          According to the Court's review of the parties' class certification briefing and evidence,

4    the facts for purposes of adjudicating the certification motion are as follows. Gomez v. J. Jacobo

5    Farm Labor Contractor, Inc., 334 F.R.D. 234, 242 (E.D. Cal. 2019) (citing In re Hydrogen

6    Peroxide Antitrust Litigation, 552 F.3d 305, 313 (3d Cir. 2008) ("Although the district court's

7    findings for the purpose of class certification are conclusive on that topic, they do not bind the

8    fact-finder on the merits.")).

9          Leprino manufactures and processes cheese and dairy ingredients at its Tracy facility in

10   Tracy, California.  The Tracy facility, which is one of several Leprino facilities in the State of

11   California, generally operates twenty-four hours a day, seven days a week, and employs over 300

12   employees. Unlike Leprino's other facilities, the Tracy facility operates a single production line

13   that runs through the facility's production departments. Due to the time sensitive nature of making

14   its cheese, Tracy's production line generally does not stop running except for routine cleaning or

15   emergencies.

16         Work Shift Policies and Practices

17         Each shift for Leprino's hourly employees is scheduled for approximately 8.5 hours

18   including a 30-minute non-paid period reserved for meals. Leprino's corporate policy provides

19   that non-exempt hourly employees "must not work while not on the clock or be on the clock

20   (punched in) while not working." Every hourly employee is required to comply with the same

21   time clock and time punch procedures outlined in Leprino's Handbook. Leprino's time clocks

22   record the exact hour and minute of each punch, but for purposes of payroll, the time punches of

23   hourly employees are rounded to the nearest quarter hour, meaning that a time punch at 7:53 a.m.

24   would be rounded up to 8:00 a.m. and a time punch at 7:52 a.m. would be rounded down to 7:45

25   a.m. These employees are subject to discipline if they punch in more than seven minutes before

26   the start of their shifts or punch out more than seven minutes after the end of their shifts because in

27   either situation unauthorized overtime pay would be generated.

28         Leprino tracks its employees' lateness and absences pursuant to an Attendance Policy.

1    Leprino's hourly employees are required to punch in by the start of their shifts, and punching in

2    just a minute after their scheduled start times is grounds for discipline. Leprino also requires its

3    hourly employees to put on uniforms and protective equipment and to wash their hands and

4    sanitize before proceeding with their work assignments. To complete these preparations in a

5    timely fashion, hourly employees regularly arrive and punch in up to seven minutes before their

6    scheduled start times. Because everyone cannot all punch in at once, lines typically form in front

7    of the time clocks during this seven-minute period. Leprino's corporate policy requires non-

8    exempt hourly employees to change into and out of uniform while on the clock, but many

9    employees arrive twenty to thirty minutes before their scheduled start times to change into their

10   gear and then punch in during the seven-minute pre-shift period to avoid being late.

11              Meal and Rest Break Policies and Practices

12              Teamsters Local No. 439 represents Tracy's hourly employees, and a collective bargaining

13   agreement ("CBA") primarily governs the terms and conditions of their work. The CBA includes a

14   "meal period" provision that grants each hourly employee "a meal period not more than five (5)

15   hours after the beginning of his or her shift." [2] Additionally, the CBA includes a "rest period"

16   provision that provides each hourly employee with a "rest period of reasonable duration (15

17   minutes) in accordance with present practices during the first and second half of work of an eight

18   (8) hour shift."[3] If Leprino interrupts an employee with a work-related matter during a meal or rest

19   break, then the employee is entitled to a premium payment, another break, or both.

20              Many hourly employees have break relief, which means other workers come in to take

21   over their duties while they go on break. However, according to several putative class members,

22   ─────────────────────

23   [2] The CBA's meal period provision states:
          Except in emergencies, each employee shall be granted a meal period not more than five (5) hours after the
          beginning of his or her shift. The meal period shall not be paid time unless the Employer, because of the

24        nature of the work, requires an on-duty meal period, which shall be paid time. Any employee who is required
          by the Employer to delay his or her meal period more than five (5) hours after the beginning of his or her

25        shift shall be compensated at one and one-half times the rate of pay from the fifth hour until the meal period
          is taken.

26   [3] The CBA's rest period provision states:
          All bargaining unit employees shall receive a rest period of reasonable duration (15 minutes) in accordance

27        with present practices during the first and second half of work of an eight (8) hour shift. The Employer shall
          not schedule an employee for a rest period during the first hour of work. When an employee is told or

28        scheduled to work nine (9) or more hours he or she shall receive an additional rest period between the eighth
          and ninth hours.

                                                       3

1    hourly employees must still remain on-call during their breaks to attend to quality and production
2    line issues. Due to the importance of the production line's continuous operation, hourly employees
3    are required to shift their responsibilities to attend to the production line whenever an issue arises.
4    For example, when excess cheese builds up on the production line, hourly employees must take
5    off the cheese temporarily through a process called "binning" or "bulking off" to prevent spillage
6    onto the floor. In-person, radio, and intercom communications are used to alert employees when
7    immediate assistance is needed. According to several putative class members, hourly employees
8    have to be ready and willing to respond to supervisors at all times, even during meal and rest
9    breaks.

10            Plaintiff's Lawsuit and Causes of Action

11           Howell filed his lawsuit against Leprino on April 24, 2018.  Doc. No. 1.  Howell's
12   Complaint raised seven causes of action on behalf of himself and a putative class: (1) failure to
13   pay minimum wages, Cal. Labor Code § 1194 and California Industrial Welfare Commission
14   Wage Order 8- 2001 ("Wage Order 8"); (2) failure to pay wages for all hours worked, Cal. Labor
15   Code § 204; (3) failure to pay overtime wages, Cal. Labor Code §§ 510, 1194, and Wage Order 8;
16   (4) failure to provide legally compliant meal and rest periods or compensation in lieu thereof, Cal.
17   Labor Code §§ 226.7, 512, and Wage Order 8; (5) failure to pay separation wages, Cal. Labor
18   Code §§ 201– 203; (6) failure to furnish accurate wage statements, Cal. Labor Code § 226; and (7)
19   unfair competition law violations, Cal. Bus. & Profs. Code § 17200, et seq. Id. Following rulings
20   on two Rule 12(c) motions and one Rule 56 motion, the only remaining claim is Plaintiff's unfair
21   competition law claim based on alleged meal and rest period violations under Labor Code § 226.7.
22   Howell now seeks certification of the class for this claim.  Doc. No. 84.

23

24                           **LEGAL STANDARD**

25           A class action is a procedural mechanism that allows for representative litigation. Amchem
26   Prods. v. Windsor, 521 U.S. 591, 613-19 (1997). This means that one or more class members may
27   "litigate on behalf of many absent class members, and those class members are bound by the
28   outcome of the representative's litigation."  1 William Rubenstein, Newberg on Class Actions

§ 1:1 (5th ed. 2012) [hereinafter, "Newberg on Class Actions"] (citing <u>Supreme Tribe of Ben Hur v. Cauble</u>, 255 U.S. 356, 363 (1921)).  "The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'"  <u>Comcast Corp. v. Behrend</u>, 569 U.S. 27, 33 (2013) (quoting <u>Califano v. Yamasaki</u>, 442 U.S. 682, 700–01 (1979)).

Class actions are governed by Rule 23 of the Federal Rules of Civil Procedure, which imposes a two-step test for deciding whether a class may be certified.  Under the first step, the court determines whether the moving party has established four perquisites:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a)(1)–(4).  If the prerequisites of Rule 23(a) are met, the court considers whether the proposed class action meets at least one of the three provisions of Rule 23(b).  Fed. R. Civ. P. 23(b).  Relevant here, Rule 23(b) states that a class action may be maintained if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

A party moving to certify a class action bears the burden of affirmatively demonstrating compliance with Rule 23.  <u>Comcast</u>, 569 U.S. at 33.  "The Rule 'does not set forth a mere pleading standard,'" but instead demands the moving party establish through evidentiary proof that the proposed class action satisfies the prerequisites of Rule 23(a) and one of the provisions of Rule 23(b).  <u>Id.</u> (quoting <u>Wal-Mart Stores, Inc. v. Dukes</u>, 564 U.S. 338, 350 (2011)). Courts generally require the moving party to demonstrate by a preponderance of the evidence that class certification is appropriate. <u>Newberg on Class Actions</u> § 7:21 (citing cases, including <u>Martin v. Sysco Corp.</u>, 325 F.R.D. 343, 354 (E.D. Cal. 2018) ("While Rule 23 does not specifically address the burden of proof to be applied, courts routinely employ the preponderance of the evidence standard.")).

To ensure the moving party has "satisfied" its burden, the district court must conduct a "rigorous analysis."  <u>Comcast</u>, 569 U.S. at 33.  Because the "class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's

cause of action," this rigorous analysis may include "prob[ing] behind the pleadings" and "overlap with the merits of the plaintiff's underlying claim." Id. at 33–34.  Yet, "'[n]either the possibility that a plaintiff will be unable to prove his allegations, nor the possibility that the later course of the suit might unforeseeably prove the original decision to certify the class wrong, is a basis for declining to certify a class which apparently satisfies' Rule 23." Sali v. Corona Reg'l Med. Ctr., 909 F.3d 996, 1004–05 (9th Cir. 2018) (quoting Blackie v. Barrack, 524 F.2d 891, 901 (9th Cir. 1975)).  Ultimately, the decision to grant or deny a motion for class certification under Rule 23 is committed to the broad discretion of the trial court.  Bateman v. Am. Multi–Cinema, Inc., 623 F.3d 708, 712 (9th Cir. 2010).

**DISCUSSION**

A.    **Leprino's Motion to Strike**

Leprino moves to strike eight declarations submitted by Howell in support of his motion for class certification on the ground that they "contain demonstrable false and misleading statements, which are contradicted significantly by the declarants' deposition testimony." Doc. No. 93-1 at 4. In opposition, Howell contends that there is no justification to strike the declarations because any discrepancies between the declarations and depositions goes to the weight of their testimony, not to whether their testimony should be stricken. Doc. No. 94 at 8. Howell further claims that sanctions in the amount of $11,625.00 should be imposed against Leprino on the ground that it knowingly, unreasonably, and vexatiously multiplied the proceedings in this case. Doc. No 94 at 29-33. In reply, Leprino argues that it provided the Court with proper authority to strike these declarations. Doc. No. 95 at 4.

"Motions to strike are generally viewed with disfavor and will usually be denied unless the allegations in the pleading have no possible relation to the controversy and may cause prejudice to one of the parties." Butcher v. City of Marysville, 398 F. Supp. 3d 715, 728 (E.D. Cal. 2019) (citing Sliger v. Prospect Mortg., LLC, 789 F. Supp. 2d 1212, 1216 (E.D. Cal. 2011)). Where declarants in a class certification motion provide deposition testimony that is inconsistent with earlier declarations, courts have assessed the strengths and weakness of those declarations, along

with all other properly submitted evidence, while considering whether the requirements of Rule 23 have been met. See Joint Equity Comm. of Inv'rs of Real Estate Partners, Inc. v. Coldwell Banker Real Estate Corp., 281 F.R.D. 422, 427 (C.D. Cal. 2012) (citing Merriweather v. Sw. Research Inst., 2010 U.S. Dist. LEXIS 117297, *10 (S.D. Ind. 2010)) (ruling that instead of striking the challenged declaration, the court will simply consider them in the normal course and give them the weight they deserved).

Here, the Court finds insufficient grounds to strike or disregard the declarations because they directly relate to the claims and defenses in this case. The Court will instead assess the strengths and weaknesses of the challenged declarations—along with all other properly submitted evidence—as it considers whether Howell's motion for class certification satisfies the requirements of Rule 23. Joint Equity, 281 F.R.D. at 427.

## B.      Class Definition

Rule 23 implicitly requires the proposed class to be ascertainable by reference to objective criteria, at least for class certification under Rule 23(b)(3). See Marcus v. BMW of North America, LLC, 687 F.3d 583, 592-93 (3d Cir. 2012); Jones v. ConAgra Foods, Inc., 2014 U.S. Dist. LEXIS 81292, 2014 WL 2702726, *8 (N.D. Cal. 2014); Lilly v. Jamba Juice Co., 308 F.R.D. 231, 236 (N.D. Cal. 2014); Newberg on Class Actions § 3:1. While courts have "ascribe[d] widely varied meanings" to the term "ascertainability," Briseno v. ConAgra Foods, Inc., 844 F.3d 1121, 1124 (9th Cir. 2017), there are three linguistic formulations commonly used to express the test for definiteness:

> [F]irst, that the class must be "precise, objective, and presently ascertainable"; second, that the class must be "adequately defined and clearly ascertainable"; and third, that the class can be ascertained "by reference to" or "based on" "objective criteria."

Newberg on Class Actions § 3:3 (citations omitted). The ascertainability requirement "protects absent plaintiffs in two ways — by enabling notice to be provided where necessary and by defining who is entitled to relief; and a definable class protects defendants by enabling a final judgment that clearly identifies who is bound by it." Id. at § 3:1. The movant for class certification

1  bears the burden of sufficiently pleading a sufficiently ascertainable class. See Whitaker v.

2  Bennett Law, PLLC, 2016 U.S. Dist. LEXIS 122873, 2016 WL 4595520, at *1 (S.D. Cal. 2016);

3  Brazil v. Dell Inc., 585 F. Supp. 2d 1158, 1167 (N.D. Cal. 2008); Newberg on Class Actions § 3:3.

4  While the ascertainability requirement provides for an "objectively ascertainable" class, the Ninth

5  Circuit does not require that the proposed class also be "administratively ascertainable." Briseno,

6  844 F.3d at 1123-26. "Administrative feasibility means that identifying class members is a

7  manageable process that does not require much, if any, individual factual inquiry." Newberg on

8  Class Actions § 3:3.

9       Howell seeks certification of the following class:

10      All non-exempt hourly workers who are currently employees, or formerly have
        been employed, as non-exempt hourly employees at Leprino's Tracy plant in
11      Tracy, California, at any time within four years prior to the filing of the original
        complaint until the date the Court grants certification.
12

13      The contours of the class are ascertainable based on objective criteria, namely, whether

14  someone was employed by Leprino as a non-exempt hourly employee at the Tracy facility.

15  Leprino does not contest that the proposed class is ascertainable. Accordingly, the Court finds that

16  the proposed class is ascertainable.

17

18      **C.    Numerosity**

19      Pursuant to Rule 23(a)(1), a class action is maintainable only if "the class is so numerous

20  that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  In general, courts find

21  the numerosity requirement satisfied when a class includes at least 40 members. Pena v. Taylor

22  Farms Pac., Inc., 305 F.R.D. 197, 213 (E.D. Cal. 2015) (citing Rannis v. Recchia, 380 F. App'x

23  646, 651 (9th Cir. 2010)); Collins v. Cargill Meat Sols. Corp., 274 F.R.D. 294, 300 (E.D. Cal.

24  2011). Based on Howell's representations, the proposed class includes at least 300 individuals.

25  This satisfies the numerosity requirement of Rule 23(a)(1). See Gomez, 334 F.R.D. at 251

26  (explaining that an exact number of class members is not required for certification if it is

27  reasonable to believe that joinder would be impracticable); Collins, 274 F.R.D. at 300.

28      Leprino contends that the proposed class is not sufficiently numerous because "Plaintiff

has failed to identify any putative class members that experienced an on-duty meal period or a late meal period due to the policies and practices alleged." Doc. No. 92, at 54:2-3. The Court disagrees. Howell presented evidence that some of the hourly employees' meal breaks were not timely, <u>see</u> Doc. No. 84 at 18, and that class members were required to attend to their duties and the production line during meal and rest periods. <u>See</u> Doc. Nos. 84 at 19, 97 at 34-37. Accordingly, the Court finds the numerosity requirement satisfied.

### D.    Commonality

Pursuant to Rule 23(a)(2), a class action is maintainable only if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  To meet the commonality requirement, class claims must be based on a "common contention . . . capable of classwide resolution."  <u>Wal-Mart Stores</u>, 564 U.S. at 350.  This means that determination of the "truth or falsity" of that contention "will resolve an issue that is central to the validity of each one of the claims in one stroke."  <u>Id.</u>  Certification does not turn on "the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation."  <u>Id.</u> (quoted source omitted).  In other words, not "every question of law or fact must be common to the class; all that Rule 23(a)(2) requires is 'a single significant question of law or fact.'"  <u>Abdullah v. U.S. Sec. Assocs., Inc.</u>, 731 F.3d 952, 957 (9th Cir.2013) (emphasis omitted) (quoting <u>Mazza v. Am. Honda Motor Co.</u>, 666 F.3d 581, 589 (9th Cir. 2012)).

The commonality requirement has similarities with and serves as the foundation to the commonality-predominance requirement of Rule 23(b)(3). <u>See</u> Newberg on Class Actions § 3:27 (explaining that Rule 23(b)(3)'s commonality-predominance requirement "obviously builds on" Rule 23(a)(2)'s commonality requirement). Because of the overlap between these two requirements, the Court will analyze Rule 23(a)(2)'s commonality requirement below when the Court analyzes Rule 23(b)(3)'s commonality-predominance requirement.  <u>See</u> <u>Gomez</u>, 334 F.R.D. at 251.

**E.    Typicality**

Pursuant to Rule 23(a)(3), a class action may be maintained only if the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  "[T]ypicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class so that the court may properly attribute a collective nature to the challenged conduct."  Newberg on Class Actions § 3:29. The test for typicality is (1) "whether other members have the same or similar injury," (2) "whether the action is based on conduct which is not unique to the named plaintiffs," and (3) "whether other class members have been injured by the same conduct."  Wolin v. Jaguar Land Rover N. Am., LLC, 617 F.3d 1168, 1175 (9th Cir. 2010) (citations omitted).

Leprino does not contest Howell's assertion that his claims are typical of those of the class. Howell has alleged and produced evidence showing that he and other putative class members suffered the same or similar injuries. For example, Howell presented evidence that his and other class members' meal breaks were not timely, that they were required to attend to the production line and other duties during meal and rest break periods, and that they were not provided premium pay or additional break periods following these interruptions. Moreover, Howell has alleged and produced evidence showing that he and other putative class members were injured by Leprino's same conduct—i.e., the alleged on-call breaks, Leprino's time punch rounding policies, pre-shift duties, and alleged failures to provide premium pay and additional breaks. Howell has not made claims based on conduct that is unique to him, but instead raises claims based on Leprino's policies and practices as they apply to the class. Thus, Howell's allegations and proffered evidence satisfy the typicality requirement.

**F.    Adequacy of representation**

Pursuant to Rule 23(a)(4), a class action is maintainable only if the "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  The term "parties" refers to both the class representative and class counsel.  In re Conseco Life Ins. Co. LifeTrend Ins. Sales & Mktg. Litig., 270 F.R.D. 521, 531 (N.D. Cal. 2010).  The Ninth Circuit tests the adequacy as follows: "(1) do the named plaintiffs and their counsel have any conflicts of

10

interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" Ellis v. Costco Wholesale Corp., 657 F.3d 970, 985 (9th Cir. 2011) (quoted source omitted).  "Adequate representation depends on, among other factors, an absence of antagonism between representatives and absentees, and a sharing of interest between representatives and absentees." Id. The standard for adequacy splits into two prongs: adequacy of the proposed class representative and adequacy of the attorneys seeking appointment as class counsel. Newberg on Class Actions § 3:54.

### 1.  Adequacy of Class Representative

The Court finds that Howell is an adequate class representative.  First, despite Leprino's contentions to the contrary, Howell is not conflicted.  He declares his primary interest is to prove Leprino violated California labor laws in ways affecting the members of the proposed class. Howell Decl. ¶¶ 19, 25-26.  Howell is not seeking recovery from Leprino's supervisors or other employees, but only from Leprino itself. Howell's stated interest is to correct the alleged legal wrongs of Leprino without jeopardizing the interests of other class members. Id. at ¶ 19. Howell intends to continue in his representative capacity until there is a resolution in this case that is in the best interest of the proposed class.  Id., ¶¶ 21-26.

Second, Howell has prosecuted the action vigorously on behalf of the class.  He has sought out and met with counsel to discuss the facts of the case, answered any questions about his experience working for Leprino, and assisted in reviewing documents and responding to Leprino's production requests.  Id., ¶¶ 21-22.  Howell also sat for a deposition, where he demonstrated an understanding of the essence of this lawsuit.

### 2.  Adequacy of Class Counsel

The Court finds that Howell's counsel are adequate representatives. The Paris Law Firm has certified numerous wage-and-hour class actions and has trial experience in the state of California. Parris Decl. ¶¶ 3–6. This Court has also recognized The Paris Law Firm as adequate representatives in other wage-and-hour class action lawsuits against Leprino.  Perez v. Leprino Foods Co., 2021 U.S. Dist. LEXIS 2165, *43 (E.D. Cal. Jan. 6, 2021); Vasquez v. Leprino Foods Co., 2020 U.S. Dist. LEXIS 56425, *35 (E.D. Cal. Mar. 30, 2020). The Court also finds that The

Paris Law Firm appears to be willing and able to commit sufficient resources to representing the proposed class. Accordingly, the adequacy of class counsel is satisfied in this case.

### G.    Commonality-Predominance

The commonality and predominance requirement of Rule 23(b)(3) asks whether the class members' interests are "sufficiently cohesive to warrant adjudication by representation." Amchem Prods. v. Windsor, 521 U.S. 591, 623 (1997). The inquiry "logically entails two steps": first, whether the issues in the case are individual or common; and, second, whether the common issues predominate over the individual issues. Newberg on Class Actions § 4:50.

As for the first step, an individual issue is one where "the members of a proposed class will need to present evidence that varies from member to member." Tyson Foods, Inc. v. Bouaphakeo, 577 U.S. 442, 453 (2016) (citing Newberg on Class Actions § 4:50). By contrast, a common issue is one either where "the same evidence will suffice for each member to make a prima facie showing," id., or, similarly, where the issue is "susceptible to generalized, class-wide proof." In re Nassau County Strip Search Cases, 461 F.3d 219, 227 (2d Cir. 2006).

As for the second step, common issues likely will not predominate if "a great deal of individualized proof" would need to be introduced to address most or all of the elements of a claim, Gomez, 334 F.R.D. at 256 (citing Klay v. Humana, Inc., 382 F.3d 1241, 1255 (11th Cir. 2004)), or "a number of individualized legal points" would need to be established after common questions were resolved, id. (citing Klay, 382 F.3d at 1255), or "the resolution of . . . [an] overarching common issue breaks down into an unmanageable variety of individual legal and factual issues." Id. (quoting Cooper v. Southern Co., 390 F.3d 695, 722 (11th Cir. 2004)). By contrast, common questions likely will predominate if "individual factual determinations can be accomplished using computer records, clerical assistance, and objective criteria — thus rendering unnecessary an evidentiary hearing on each claim," id. (citing Smilow v. Southwestern Bell Mobile Systems, Inc., 323 F.3d 32, 40 (1st Cir. 2003)), or "when adding more plaintiffs to the class would minimally or not at all affect the amount of evidence to be introduced." Id. (citing Newberg on Class Actions § 4:50). A finding of predominance will generally not be defeated

1    merely because there is a need to make individualized damage determinations. See Just Film, Inc.

2    v. Buono, 847 F.3d 1108, 1121 (9th Cir. 2017); Leyva v. Medline Indus. Inc., 716 F.3d 510, 514

3    (9th Cir. 2013).

4        Here, Howell presents two sets of common questions—one set concerning his "late meal

5    break" claim and one set concerning his "on-call break" claim. The Court will undertake the

6    commonality-predominance inquiry by analyzing both of Howell's claims, and his theories of

7    liability for each, in turn. Erica P. John Fund, Inc. v. Halliburton Co., 563 U.S. 804, 809 (2011)

8    ("Considering whether questions of law or fact common to class members predominate begins, of

9    course, with the elements of the underlying cause of action."); Jimenez v. Allstate Ins. Co., 765

10   F.3d 1161, 1165–66 (9th Cir. 2014) ("Whether a question will drive the resolution of the litigation

11   necessarily depends on the nature of the underlying legal claims that the class members have

12   raised.").

13               1.   Howell's Late Meal Break Claim

14       "Under California law, employers must generally provide employees with one 30-minute

15   meal period that begins no later than the end of the fifth hour of work[.]" Donohue v. AMN

16   Servs., LLC, 11 Cal. 5th 58, 61 (2021) (citing Lab. Code § 512(a)). If an employer does not

17   provide an employee with a compliant meal period, then "the employer shall pay the employee

18   one additional hour of pay at the employee's regular rate of compensation for each workday that

19   the meal … period is not provided." Id. (citing Lab. Code, § 226.7(c)). Even a minor infringement

20   of the meal period triggers the premium pay obligation. Id. at 68.

21       Howell claims that the following is a common question that will drive the resolution of the

22   litigation: whether Leprino's time punch rounding policy and attendance policy, taken together,

23   result in untimely meal periods for the putative class members in violation of California law.

24   Leprino argues that Howell's commonality argument fails because he has not submitted sufficient

25   evidence showing that Leprino systematically provided the putative class members with late meal

26   periods without appropriate compensation.

27       Whether a question will drive the resolution of the litigation necessarily depends on the

28   nature of the underlying legal claims that the class members have raised. Jimenez, 765 F.3d at

1165 (citing <u>Parsons v. Ryan</u>, 754 F.3d 657, 676 (9th Cir. 2014)). Here, the Court finds that Howell has not carried his burden of demonstrating that a uniform corporate policy denying employees the opportunity to take timely meal breaks could be proven on a classwide basis. <u>Ordonez v. Radio Shack, Inc.</u>, 2013 U.S. Dist. LEXIS 7868, *23 (C.D. Cal. 2013) (finding no uniform corporate policy denying employees the opportunity to take meal breaks that could be proven on a classwide basis because evidence showing that "some employees may have been deprived of the opportunity to take an uninterrupted meal break, directly or indirectly, does not amount to a 'policy and practice' capable of determining [defendant's] liability on a classwide basis"). Howell does not contend that the CBA provision regarding meal breaks violates California law.[4] Instead, Howell contends that the dual implementation of Leprino's rounding policy and attendance policy causes or has the effect of hiding late meal breaks. However, Howell has submitted only two declarations from putative class members stating that their meal breaks were untimely,[5] Doc. No. 84-1 at 18:18-19 (Dewalt Decl. at ¶ 9; French Decl. at ¶ 10), and one of these declarants subsequently stated under oath that she was never denied a meal break within the first five hours of her work shift. (French Dep. 191:19-195:8).  This evidence alone is not enough to carry the burden in showing a facility-wide policy or practice. <u>Perez</u>, 2021 U.S. Dist. LEXIS 2165 at *23-24; <u>Garcia v. Lift</u>, 2021 U.S. Dist. LEXIS 68195, *86 (E.D. Cal. Apr. 6, 2021).

Howell suggests that in light of *Donohue*, Leprino's rounding and attendance policies create a presumption of meal period violations. However, *Donohue*'s rebuttable presumption "does little to satisfy [Howell's] burden to establish by a preponderance of the evidence that [he has] satisfied Rule 23's requirements for class certification." <u>Gonzalez v. Hub Int'l</u>, 2021 U.S. Dist. LEXIS 147298, *14 (C.D. Cal. May 25, 2021). As *Donohue* itself recognizes, "If the records are incomplete or inaccurate — for example, the records do not clearly indicate whether the

---

[4] Regarding meal periods, the CBA states:

> Except in emergencies, each employee shall be granted a meal period not more than five (5) hours after the beginning of his or her shift. The meal period shall not be paid time unless the Employer, because of the nature of the work, requires an on-duty meal period, which shall be paid time. Any employee who is required by the Employer to delay his or her meal period more than five (5) hours after the beginning of his or her shift shall be compensated at one and one-half times the rate of pay from the fifth hour until the meal period is taken.

[5] Howell initially submitted three declarations in support of this point with his motion for class certification on June 30, 2021 (Doc. No. 84-1:18), but he later withdrew one of them on September 7, 2021 (Doc. No. 91).

1    employee chose to work during meal periods despite bona fide relief from duty — then the

2    employer can offer evidence to rebut the presumption." Donohue, 11 Cal. 5th at 7. Here, Leprino

3    opposed certification with evidence that it insisted that its employees take their meal periods by

4    the fifth hour. Doc. No. 92:30. Leprino also opposed certification with testimony from employees

5    who state that Leprino did not stop them from taking their meal breaks by the fifth hour. Doc. No.

6    92 at 30 (Anaya Dep. 64:18-21; Allan Dep. 75:13-20; French Dep. 66:14-18; Travers Dec. ¶¶ 4, 7;

7    Yates Dec. ¶ 6).

8            Rather than demonstrating the existence of a uniform policy of depriving employees of

9    timely meal breaks, the evidence before the Court presents numerous possibilities as

10   to why Leprino's rounding and attendance policies *may* cause untimely meal breaks during a given

11   shift. Ordonez, 2013 U.S. Dist. LEXIS 7868 at *24. This evidence is insufficient for the Court to

12   conclude that Leprino denied its employees the opportunity to take timely meal breaks on a

13   classwide basis.

14           Having concluded that Howell's late meal break theory does not satisfy the commonality

15   requirement, the question of whether common questions predominate over individualized ones is

16   moot.

17           2.   Howell's On-Call Break Claim

18           Under California law, "employees must not only be relieved of work duties [during

19   breaks], but also be freed from employer control over how they spend their time." Augustus v.

20   ABM Sec. Servs., Inc., 2 Cal. 5th 257, 270 (2016); see also Brinker Rest. Corp. v. Superior Court,

21   53 Cal. 4th 1004, 1038-39 (2012) (stating that the "fundamental employer obligations associated

22   with a meal break" are "to relieve the employee of all duty and relinquish any employer control

23   over the employee and how he or she spends the time"). In *Augustus*, the California Supreme

24   Court explained that if employees are effectively "on call" during meal or rest periods because

25   conditions require them to be ready and capable of being summoned to action, then the breaks

26   provided are not control-free and, consequently, not legally compliant. Augustus, 2 Cal. 5th at

27   270. Employers who fail to provide duty free meal or rest breaks must pay the employee "one

28   additional hour of pay at the employee's regular rate of compensation for each workday that the

1  meal or rest period [was] not provided." Cal. Lab. Code § 226.7.

2      Howell claims that the following facts collectively demonstrate that Leprino's hourly

3  employees are "on-call" during their meal and rest breaks: (1) Leprino's policies stress "quality"

4  and makes "quality" the class members' responsibility, effectively requiring them to attend to the

5  production line even during breaks; (2) Leprino's bulking-off process requires employees to

6  remain alert and responsive to supervisors during their breaks; (3) Leprino instructs its employees

7  to always answer their supervisor's questions and follow their instructions, with no exceptions

8  made for breaks; (4) many workers are assigned radios and are told they must carry it with them at

9  all times, including during their breaks; (5) Leprino installed an intercom in the breakroom so

10  workers could communicate with the floor while on break; (6) putative class members are

11  disciplined, suspended, or even terminated if they fail to respond to questions or return to work

12  when asked; and (7) the testimony of the putative class members confirm that Leprino's policies

13  and practices have created a culture of on-call breaks. Collectively, these facility-wide policies and

14  practices, according to Howell, naturally pose a common question that is central to his claim:

15  namely, in light of Leprino's uniform policies and practices, are the class members actually on call

16  during breaks?  Said differently, are the class members not truly freed from Leprino's control

17  during their breaks? Vasquez, 2020 U.S. Dist. LEXIS 56425 at *43.

18      Unlike the late meal break claim, the Court finds that Howell has presented sufficient

19  evidence to satisfy the commonality requirement for his on-call break claim. Howell, through

20  several witness declarations and depositions from hourly employees who are putative members of

21  the class, presented evidence showing that the class was subjected to Leprino's foregoing policies

22  and practices. Evon v. Law Offices of Sidney Mickell, 688 F.3d 1015, 1029 (9th Cir. 2012)

23  ("[C]ommonality requires the plaintiff to demonstrate the class members 'have suffered the same

24  injury.'"); Staton v. Boeing Co., 327 F.3d 938, 954 (9th Cir. 2003) ("[T]he breadth and

25  consistency of class counsel's initial evidence places the district court's finding of commonality

26  well within that court's discretion."). For example, many putative class members stated that they

27  and other employees were regularly contacted during their breaks about work-related matters, be it

28  via radio, intercom, or in person. Allan Depo. at 68:11–69:11; Anaya Depo. at 69:7–18, 149:10–

16

150:25); Chhann Depo. at 72:18–25, 74:3–25, 88:16–92:23, 108:4–111:3; DeWalt Depo. at 41:25–42:8, 204:4–205:7; Gutierrez Depo. at 97:20–98:21, 195:7–196:1; Hurst Depo. at 87:16–22, 92:4–8, 146:13–147:6, 149:17–21, 150:8–151:9, 154:18–155:16; Rosales Depo. at 125:21–126:3; Sun Depo. at 130:23–131:5, 132:20–133:4; Smith Depo. at 94:1–21, 97:25–98:18, 188:18–189:16; Travers Depo. at 85:11–87:15, 89:5–90:9. Additionally, many putative class members stated that they were required to attend to their duties and the production line at all times, even during meals and rest periods. Anaya Decl. at ¶ 6; Allan Decl. at ¶ 4; French Decl. at ¶ 9; DeWalt Decl. at ¶¶ 4, 7; Chhann Decl. at ¶ 5; Guaydacan Decl. at ¶ 4; Smith Decl. at ¶ 5; Rosales Decl. at ¶ 5; Howell Decl. at ¶¶ 17–18.

In light of this evidence, there exists a common question as to whether Leprino's uniform policies and practices compel employees to remain on-call during their meal and rest periods. This common question is central to Howell's claim and one that can be answered with common proof regarding common injury. If at trial the jury answers yes, then Leprino is liable to the class for meal and rest period violations; if the answer is no, then Leprino is not liable. This satisfies the commonality requirement under Rule 23(a)(2). Perez, 2021 U.S. Dist. LEXIS 2165 at *31 (finding there exists a common question as to whether Leprino's uniform policies and practices compel employees to remain on-call during their meal and rest periods); Vasquez, 2020 U.S. Dist. LEXIS 56425 at *43-*45 (same); see also Wright v. Renzenberger, Inc., 2017 U.S. Dist. LEXIS 225209, *19 (C.D. Cal. Sep. 30, 2017) (finding common question as to whether drivers were on-call during rest periods based on uniform policy); Ayala v. U.S. Xpress Enters., 2017 U.S. Dist. LEXIS 125247, *29 (C.D. Cal. July 27, 2017) ("[L]iability will turn on whether 'securing the load' and responding to alerts messages rises to the level of employee control that would turn any break periods provided into impermissible on call breaks, that would consequently require compensation.").

Leprino's arguments against commonality are not persuasive. First, Leprino presents testimonies and declarations from putative class members that purportedly stand for the proposition that "there is no policy requiring them to remain available 'at the ready,' or 'on-call' during breaks." Doc. No. 92 at 40 (citing Rosales Dep. at 116:22-25; 124:21-125:3; Anaya Dep. at

119:11-14; 120:8-11; DeWalt Dep. at 215:16-217:6; Allan Dep. at 73:10-21; Guaydacan Dep. at 69:10- 15.; French Dep. at 134:22-25; 138:5-13). However, the testimonies Leprino references do not stand for that proposition; they merely state they have not seen anything *in writing* that requires them to remain reachable or on-call during their breaks. Furthermore, among the eight declarations Leprino references, two are from supervisors, one is from a former senior accounting clerk in the Administrative Department, and one is from an employee who had requested on the record that his declaration be withdrawn. The remaining four declarations are from current hourly employees whose statements the Court is reluctant to place significant weight in given the "risk of bias and coercion" inherent in such testimony. Shaw v. AMN Healthcare, Inc., 326 F.R.D. 247, 269 (N.D. Cal. 2018); see Garcia v. Cent. Coast Rests., Inc., 2022 U.S. Dist. LEXIS 38803, at *24 (N.D. Cal. Mar. 4, 2022) ("[The declarations present reliability concerns, as all the declarations come from current employees."). The Court's concern is heightened by the fact that among these four hourly employees, two subsequently gave testimony that cast doubt on their declarations that Leprino has no on-call break policy. Travers Depo. at 85:11–87:15 (describing radios going off in breakroom), 89:5–90:9 (radios are on and used during breaks); Gutierrez Depo. at 97:20–98:21 (responding to binning off and production stopping), 195:7–196:1 (responding to radios).

Second, Leprino contends that it does not have a *de facto* on-call break policy because not every employee was subject to every kind of interruption. For example, not every employee carried a radio, not every employee was required to watch the line, not every employee was required to partake in the bulking-off process, and not every employee recalled ever being contacted through the intercom system. However, as this Court stated in *Perez*, Howell's "integrated theory does not depend on that being the case." Perez, 2021 U.S. Dist. LEXIS 2165 at *33. Rather, Howell seeks recovery on the basis that "combining all these individual practices creates a uniform policy that itself violates the law as to all putative class members." Id.  In that sense, "even if an individual practice is not directly applicable to all employees—such as those who did not carry radios—evidence of that practice may be reasonably considered by the factfinder as one part of an environment where employees are effectively on-call at all times." Id. at *33-34.

18

1    Finally, Leprino argues that even if the putative class members were "on-call" during their

2    breaks, Howell has not presented sufficient evidence that they were subject to Leprino's "control"

3    during those times. Leprino specifies that the putative class members were not subject to Leprino's

4    "control" because they "routinely pursued personal endeavors during break time without issue,

5    without the need to seek permission, without the need to remain available, and without first having

6    to change out of uniforms." Doc. No. 92 at 49:11-13 (citing Hurst Dec. ¶ 9; Gutierrez Dec. ¶ 9;

7    Renteria Dec. ¶ 12; Jachlich Dec. ¶ 9; Yates Dec. ¶ 8; Vandermeulen Dec. ¶ 5). Additionally,

8    Leprino claims it "did not require the few employees who carried radios to respond to radio calls

9    during breaks." Doc. No. 92 at 49:23-24 (citing Guaydacan Dep. 94:6-21; 144:24-145:15;

10   Gutierrez Dec. ¶ 11; Hurst Dec. ¶ 8). However, this "control" argument suffers from the same

11   problems discussed above; that is, Leprino's referenced declarations and testimonies either are not

12   from putative class members or present credibility and weight concerns, and Howell presented

13   testimonial evidence to the contrary. Additionally, the California Supreme Court in *Augustus*

14   expressly distinguished *Mendiola v. CPS Sec. Sols., Inc.*, 60 Cal. 4th 833 (2015), a case Leprino

15   heavily relies on for its multifactor test on whether an employer has control over an employee

16   during on-call time. Augustus, 2 Cal. 5th at 271 n.13. *Augustus* distinguished *Mediola* because (1)

17   the eight-hour on-call shifts in *Mediola* were "significantly different from breaks, which are short

18   in duration, break up work periods, and thereby protect employees' health and safety" and (2) the

19   "factors relevant to the extent of employer control during an on-call shift of eight hours or more

20   are inapposite in the context of a rest or meal period." Id.

21   Having found the commonality requirement satisfied with respect to Howell's on-call

22   break theory, the Court turns to the predominance requirement of Rule 23(b)(3). As previously

23   stated, a central common question regarding this theory is whether Leprino's uniform policies and

24   practices effectively resulted in employees being placed on call during breaks. The Court finds

25   that the common question predominates over any individualized inquires because answering this

26   common question does not require a great deal of individualized proof but can instead be done

27   with the aforementioned facility-wide policies and practices.

28   Leprino contends that individualized questions predominate because individualized

19

1   inquiries are necessary to determine each putative class member's interpretation and

2   understanding of the aforementioned policies, and whether the putative class members were still

3   under Leprino's control during break time.  See Doc. No. 92 at 39, 52. The Court disagrees.

4   Leprino's argument is unavailing because the Court has already found that Howell's alleged

5   policies and practices are sufficiently facility-wide. Howell presented sufficient objective evidence

6   that Leprino's policies and practices regarding product quality, bulking off, responsiveness to

7   supervisors, discipline, and radio and intercom use collectively create a common question, and this

8   common question predominates over individualized inquiries into the members' subjective

9   understanding of these policies and practices. Based on the evidence presented from the parties,

10  the Court is not persuaded that Leprino's policies and practices varied significantly amongst most

11  putative class members.

12        In sum, the Court concludes that Howell's on-call break claim satisfies the commonality

13  and predominance requirements of Rule 23(a) and Rule 23(b)(3).

14

15        **H.      Superiority**

16        Certification under Rule 23(b)(3) also requires a finding that "a class action is superior to

17  other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P.

18  23(b)(3).  To evaluate superiority, the court shall consider four "pertinent" factors: (1) the class

19  members' interests in individually controlling the prosecution or defense of separate actions; (2)

20  the extent and nature of any litigation concerning the controversy already begun by or against

21  class members; (3) the desirability or undesirability of concentrating the litigation of the claims in

22  the particular forum; and (4) the likely difficulties in managing a class action.  Fed. R. Civ. P.

23  23(b)(3)(A)–(D).  "A consideration of these factors requires the court to focus on the efficiency

24  and economy elements of the class action so that cases allowed under subdivision (b)(3) are those

25  that can be adjudicated most profitably on a representative basis."  Zinser v. Accufix Research

26  Inst., Inc., 253 F.3d 1180, 1190 (9th Cir. 2001) (citation omitted).  "A class action is the superior

27  method for managing litigation if no realistic alternative exists."  Valentino v. Carter–Wallace,

28  Inc., 97 F.3d 1227, 1234 (9th Cir. 1996).  In contrast, "[i]f each class member has to litigate

1  numerous and substantial separate issues to establish his or her right to recover individually a class
2  action is not superior."  Zinser, 253 F.3d at 1192.

3          Here, Howell argues that class treatment is superior, and Leprino does not substantively
4  address the issue in opposition.  The Court finds the Rule 23(b)(3) factors weigh in favor of
5  certification.  There is no indication of putative class members wanting to individually control the
6  prosecution of separate actions.  Nor is there indication of other actions raising the same issues
7  based on the same facts pertaining to Leprino's Tracy facility.  There is also no indication here
8  that managing this action as a class action would be unmanageable.  To the contrary, these claims
9  seem particularly apt for class adjudication through use of records and data in Leprino's
10  possession.  See Kamar v. Radio Shack Corp., 254 F.R.D. 387, 405 (C.D. Cal. 2008) (finding that
11  inquiries into class members' actual wages would be relatively manageable because defendant's
12  payroll records contain that data).  Finally, class litigation is superior here, as it often is in wage-
13  and-hour lawsuits, because "the individual damages of each employee are too small to make
14  litigation costs effective."  Wright v. Renzenberger, Inc., 2017 U.S. Dist. LEXIS 225209, *36
15  (C.D. Cal. 2017).

16

17                                          **ORDER**

18          Accordingly, IT IS HEREBY ORDERED that:

19      1.      Howell's certification motion (Doc. No. 84) is GRANTED IN PART and DENIED
20              IN PART as follows:

21          a.      Howell's late lunch breaks claim is NOT CERTIFIED for class aggregation
22                  under Rule 23;

23          b.      Howell's on-call breaks claim is CERTIFIED for class aggregation under
24                  Rule 23(b)(3);

25          c.      The class is defined as follows:

26                  All non-exempt hourly workers who are currently employees, or
                    formerly have been employed, as non-exempt hourly employees at
27                  Leprino's Tracy plant in Tracy, California, at any time within four
                    years prior to the filing of the original complaint until the date the
28                  Court grants certification.

       d.      Andrew Howell is APPOINTED as the class representative.

       e.      The Parris Law Firm and The Downey Law Firm are APPOINTED as class counsel;

2.     Leprino's Motion to Strike (Doc. No. 93) is DENIED;

3.     The parties must promptly MEET AND CONFER about the submission of a joint stipulated class notice and distribution plan.  Within twenty-one (21) days of this order, the parties must FILE either a stipulated class notice and distribution plan or a notice that no stipulation can be agreed to.  If the parties cannot agree to a class notice or distribution plan, then Howell must FILE a proposed class notice and distribution plan within thirty-five (35) days of this order, and Leprino shall have fourteen (14) days following Howell's filing to FILE any objections, and Howell shall have seven (7) days following Leprino's filing to FILE a reply; and

3.     This case is REFERRED BACK to the assigned magistrate judge for further scheduling and other proceedings consistent with this order.

IT IS SO ORDERED.

Dated:   March 22, 2022

_____
SENIOR  DISTRICT  JUDGE